## IN THE COURT OF COMMON PLEAS
## SUMMIT COUNTY, OHIO

| | |
|---|---|
| **MATTHEW MICOZZI**<br>**799 Eastwood Avenue**<br>**Tallmadge, Ohio 44278** | **Case No.** |
| | **Judge** |
| **Plaintiff,** | **Complaint** |
| **v.**<br>**CITY OF GREEN**<br>**1755 Town Park Boulevard**<br>**Green, Ohio 44685** | |
| **Defendant.** | |

---

## COMPLAINT FOR BREACH OF CONTRACT, BREACH OF SETTLEMENT AGREEMENT, BREACH OF COLLECTIVE BARGAINING AGREEMENT, AND LMRA § 301 CLAIM (29 U.S.C. § 185)

---

### JURY DEMAND ENDORSED HEREON

Plaintiff Matthew Micozzi ("Plaintiff"), by and through undersigned counsel, for his Complaint against Defendant City of Green ("City") ("Defendant"), states as follows:

### I. PARTIES

1. Plaintiff Matthew Micozzi is an individual residing at 799 Eastwood Avenue, Tallmadge, Ohio 44278, and, at all relevant times, was an employee, bargaining-unit member, and/or intended beneficiary of contractual rights, agreements, policies, and collective-bargaining provisions applicable to his employment with the City of Green.

2. Defendant City of Green is a municipal corporation and political subdivision located in Summit County, Ohio, with an address of 1755 Town Park Boulevard, Green, Ohio 44685, and at all relevant times employed Plaintiff and was a party to and/or bound by the agreements described herein.

3. Non-party International Association of Fire Fighters Local #2964 is a labor organization and/or employee representative with an address of 1755 Town Park Boulevard, Green, Ohio 44685. At all relevant times, Local #2964 represented bargaining-unit employees including Plaintiff and was a party to and/or bound by the applicable collective bargaining agreement and related agreements described herein.

1 | P a g e

**Exhibit A**

## II. JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over this action because Plaintiff seeks damages in excess of Twenty-Five Thousand Dollars ($25,000.00), exclusive of interest and costs, and because the claims arise under Ohio law and, to the extent applicable, Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

5. State courts have concurrent jurisdiction over claims brought under LMRA § 301, 29 U.S.C. § 185.

6. Venue is proper in Summit County, Ohio because Defendant City of Green is located in Summit County, Ohio; the events and omissions giving rise to Plaintiff's claims occurred in Summit County, Ohio; and the agreements at issue were to be performed, in whole or in substantial part, in Summit County, Ohio.

## III. FACTUAL ALLEGATIONS

7. Plaintiff incorporates by reference all preceding paragraphs as if fully rewritten herein.

8. Matthew C. Micozzi was employed continuously by the City of Green beginning in January 2003.

9. At the time of his separation from employment, Plaintiff was employed by the City of Green as a Fire Lieutenant.

10. Plaintiff retired from the City of Green effective April 30, 2025.

11. At the time of his retirement and separation from employment, Plaintiff had more than 2,400 hours of earned and unused sick time.

12. On or about January 6, 2025, Plaintiff formally notified the City of Green of his intent to retire.

13. Plaintiff was eligible for retirement under applicable Ohio Police and Fire Pension Fund rules and guidance.

14. Under Ohio Police and Fire Pension Fund rules and guidance, a member with 25 years of service credit may separate for retirement before reaching 48 years of age, but will not receive pension payments until reaching 48 years of age.

15. Plaintiff provided documentation to the City showing his retirement eligibility and his right to separate before age 48 and wait until age 48 to receive pension benefit payments.

16. Plaintiff should have been eligible to retire with full benefits on March 31, 2025.

17. The City of Green refused to pay Plaintiff his contractually earned sick time separation pay.

18. Plaintiff was informed that the City did not view his separation as a retirement.

19. Plaintiff verbally objected to the City's refusal and advised the City that he believed its position was inaccurate and unacceptable.

20. Plaintiff furnished, through his union representative, documentation from the Ohio Police and Fire Pension Fund and the applicable member manual stating that he was

2 | P a g e

eligible and that members may separate before age 48 and wait until age 48 to receive pension benefit payments.

21. The documentation provided to the City included an estimated pension benefit.

22. The City continued to refuse to pay Plaintiff's sick time separation pay.

23. Plaintiff later provided another letter from the Ohio Police and Fire Pension Fund stating that he was eligible for a normal service pension as of March 31, 2025, and that he could terminate employment and wait until age 48 to receive pension benefit payments.

24. City Law Director Lisa Dean provided an opinion, furnished to Plaintiff by email, recommending that the City pay Plaintiff upon his reaching 48 years of age.

25. Plaintiff contends that the Law Director's recommendation was inconsistent with the applicable collective bargaining agreement language, which provides that upon separation from employment due to retirement of any kind, the employee is to be paid 50% of accumulated unused sick leave.

26. Plaintiff asked Union representative Kevin Atkinson to pursue immediate payment based on the contract language and based on the City Law Director's written acknowledgement that payment was owed.

27. Plaintiff was never formally offered payment at age 48 and never rejected payment at age 48.

28. The Union filed a grievance concerning the City's refusal to pay Plaintiff's sick time separation pay.

29. The grievance was rejected by Chief Jeff Funai and proceeded to Step 2 of the grievance process before the Mayor.

30. Mayor Rocco Yeargin denied the grievance, and the Union requested arbitration.

31. Thereafter, the City approached the Union to hold a labor-management meeting, to which Plaintiff consented.

32. Present at the labor-management meeting were Mayor Rocco Yeargin, HR Director Pam Serina, Chief Jeff Funai, Union President Kevin Atkinson, Union Vice President Sam Sprankle, and Plaintiff.

33. At the meeting, Mayor Yeargin stated that he had reviewed the case and believed he did not have to pay Plaintiff, but wanted to offer a settlement that would address the parties' concerns.

34. Mayor Yeargin stated that he did not wish to set a precedent or fight an arbitration, and that the settlement should stand alone.

35. Mayor Yeargin offered to pay Plaintiff what he was owed in accordance with the contract, but characterized the payment as a settlement.

36. Mayor Yeargin stated that the only proviso was approval by the state auditor.

37. Mayor Yeargin asked that the Union drop the arbitration and remain open to discussing a change to the language of the separation article.

3 | P a g e

38. Mayor Yeargin did not require a specific outcome concerning any contract-language change as a condition of settlement, but asked only that the Union be open to negotiating the language.

39. Mayor Yeargin provided a copy of proposed language on plain paper without letterhead.

40. No one present objected to the settlement proposal, and Plaintiff contends that the parties verbally agreed to the settlement.

41. HR Director Pam Serina stated that Plaintiff would be paid during the next non-base pay period.

42. Plaintiff was not paid.

43. The Union entertained the proposed language change and worked out proposed language, but the proposed change was voted down by the Union body, leaving the existing contract language in place.

44. IAFF Local #2964 asked Plaintiff to meet with its executive board on August 21, 2025.

45. On August 21, 2025, Plaintiff was given a letter stating that the Union would not represent him and would not arbitrate his grievance.

46. Plaintiff had open-heart surgery for an aortic aneurysm in 2020 and was off normal work duty on approved sick leave for nearly the entire year.

47. Plaintiff applied for and was approved for a disability pension in the event he could not return to work or had an adverse outcome from surgery.

48. Plaintiff recovered sufficiently to return to work but found the pace and demands of the City of Green Fire Department difficult to maintain.

49. Plaintiff intended to complete 25 years of service and then retire, and he made that intention known for years.

50. Plaintiff has worked for the City or Village of Reminderville since January 12, 2021, as a firefighter.

51. Plaintiff's Reminderville work is substantially less demanding than his City of Green employment because the run volume is lower, he works only as a firefighter with no EMS duties except in rare circumstances, he is not an officer, the work week is shorter, and there is virtually no overtime.

52. The City of Green relied, in part, on Plaintiff's continued work to refuse payment.

53. The collective bargaining agreement does not prohibit continued secondary employment or post-separation employment as a condition of receiving sick time separation pay.

54. No other retiree covered by the collective bargaining agreement has been required to completely retire from all external employment to receive separation pay, and many retired firefighters continue working after retirement from primary employment.

55. Plaintiff's continued work at a job he already held is not a lateral transfer and is not a basis to deny his contractually earned sick time separation pay.

56. Plaintiff contends that the City of Green is liable for breach of contract, breach of verbal settlement agreement, and related wrongful conduct.

57. Defendant' acts and omissions caused Plaintiff damages in an amount to be determined at trial, but in excess of $42,658.34 (2454.12 hrs. x 50% x hourly rate ($35.37/hr.), together with attorney's fees, costs, interest, and all other relief allowed by law or equity.

## IV. FIRST CLAIM FOR RELIEF
### (Breach of Contract)

58. Plaintiff incorporates by reference all preceding paragraphs as if fully rewritten herein.

59. One or more valid and enforceable contracts existed between Plaintiff and one or more Defendant, and/or Plaintiff was an intended third-party beneficiary of such contracts.

60. Plaintiff satisfied his obligations under the contracts, or performance was waived, excused, prevented, or otherwise rendered unnecessary.

61. Defendant breached the contracts by failing to comply with their obligations to Plaintiff, including but not limited to obligations relating to compensation, benefits, employment status, retirement eligibility, and other rights and benefits owed to Plaintiff.

62. As a direct and proximate result of Defendant' breaches, Plaintiff suffered damages in an amount to be proven at trial, but in excess of$42,658.34 (2454.12 hrs. x 50% x hourly rate ($35.37/hr.), plus attorney's fees, costs, interest, and other relief permitted by law.

## V. SECOND CLAIM FOR RELIEF
### (Breach of Settlement Agreement)

63. Plaintiff incorporates by reference all preceding paragraphs as if fully rewritten herein.

64. Plaintiff and one or more Defendant entered into a valid and enforceable settlement agreement and/or related agreement resolving or governing matters concerning Plaintiff's employment, compensation, benefits, seniority, retirement-related rights, and/or other employment-related rights.

65. Plaintiff performed his obligations under the settlement agreement, or such performance was waived, excused, prevented, or otherwise rendered unnecessary.

66. Defendant breached the settlement agreement by failing to provide Plaintiff the rights, benefits, treatment, and/or consideration required under the agreement.

67. As a direct and proximate result of Defendant' breach of the settlement agreement, Plaintiff suffered damages in an amount to be proven at trial, but in excess of

$42,658.34 (2454.12 hrs. x 50% x hourly rate ($35.37/hr.), plus attorney's fees, costs, interest, and other relief permitted by law.

## VI. THIRD CLAIM FOR RELIEF
### (Breach of Collective Bargaining Agreement)

68. Plaintiff incorporates by reference all preceding paragraphs as if fully rewritten herein.
69. At all relevant times, a collective bargaining agreement governed certain terms and conditions of Plaintiff's employment, including wages, hours, benefits, seniority, grievance rights, retirement-related rights, and other terms and conditions of employment.
70. Plaintiff was a bargaining-unit employee and/or intended beneficiary of the collective bargaining agreement.
71. The City and/or Local #2964 were bound by the collective bargaining agreement and were required to comply with its terms and to administer it in good faith and in accordance with law.
72. Defendant breached the collective bargaining agreement by failing to provide Plaintiff the rights, benefits, and protections required by the agreement, including rights relating to Plaintiff's eligibility to retire with full benefits on January 6, 2025.
73. As a direct and proximate result of Defendant' breaches of the collective bargaining agreement, Plaintiff suffered damages in an amount to be proven at trial, but in excess of $42,658.34 (2454.12 hrs. x 50% x hourly rate ($35.37/hr.), plus attorney's fees, costs, interest, and other relief permitted by law.

## VII. FOURTH CLAIM FOR RELIEF
### (LMRA § 301 Claim — 29 U.S.C. § 185)

74. Plaintiff incorporates by reference all preceding paragraphs as if fully rewritten herein.
75. To the extent applicable, this action arises under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, because Plaintiff seeks relief for violations of contracts, including a collective bargaining agreement and related agreements, between an employer and a labor organization representing employees.
76. Defendant was bound by the applicable collective bargaining agreement and related agreements and were required to comply with those agreements.
77. Defendant violated the collective bargaining agreement and related agreements by failing to provide Plaintiff the rights, benefits, and protections owed to him, including rights related to compensation, benefits, seniority, retirement eligibility, and retirement with full benefits as of January 6, 2025.

Tavia Galonski, Summit County Clerk of Courts

78. To the extent required, Plaintiff exhausted applicable contractual remedies, was prevented or excused from doing so, or exhaustion would have been futile due to Defendant' acts and omissions.

79. As a direct and proximate result of Defendant' violations of the applicable agreements, Plaintiff suffered damages in an amount to be proven at trial, but in excess of $42,658.34 (2454.12 hrs. x 50% x hourly rate ($35.37/hr.), plus attorney's fees, costs, interest, and other relief permitted by law.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Matthew Micozzi respectfully requests judgment in his favor and against Defendant City of Green and International Association of Fire Fighters Local #2964, jointly and severally as permitted by law, and requests that the Court award the following relief:

A. Compensatory damages in an amount to be proven at trial, but in excess of $42,658.34 (2454.12 hrs. x 50% x hourly rate ($35.37/hr.);

B. Damages for lost wages, lost benefits, lost retirement benefits, lost seniority, and all other economic losses;

C. Specific performance, declaratory relief, and/or equitable relief requiring Defendant to recognize and provide Plaintiff the contractual, settlement, collective-bargaining, and retirement-related rights and benefits owed to him, including recognition that Plaintiff should have been eligible to retire with full benefits on January 6, 2025;

D. Prejudgment and post-judgment interest as allowed by law;

E. Attorney's fees, costs, and expenses as allowed by contract, statute, equity, or other applicable law; and

F. Such other legal and equitable relief as this Court deems just and proper.

## IX. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,
Thomas C. Loepp, Law Offices, Co,
LPA

/s/ Thomas C. Loepp
Thomas C. Loepp, Esq. (#0046629)
3580 Darrow Road
Stow, Ohio 44224
(330) 688-0560
Tom@AttorneyLoepp.com
Attorney for Plaintiff